Donald Lee FUENTES, Appellant,

v.

The STATE of Texas, Appellee.

No. 62076.

Court of Criminal Appeals of Texas, Panel No. 1.

Feb. 8, 1984.

Lawrence B. Mitchell, Dallas, for appellee.

Henry Wade, Dist. Atty. and Maridell Templeton, Mary Ludwick and Mike Keasler, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for unauthorized use of a motor vehicle, V.T. C.A., Penal Code § 31.07. After finding appellant guilty, the jury assessed punishment, enhanced by two prior convictions, at life.

Appellant was convicted of intentionally and knowingly operating a motor vehicle belonging to Deborah Richards, without her effective consent. Appellant contended that he was recruited by the police and one of their informants to help make a case against one Johnny Jirik. According to appellant, the police gave him the car in question, which had been confiscated in a drug raid, to use while he was making the case on Jirik. Appellant denied knowing the car was stolen.

In his first ground of error appellant complains of a comment directed at defense counsel by the prosecutor.

Appellant's attorney was cross-examining Steve Brasher, an investigator with the Dallas Police Department who participated in appellant's arrest, when the following occurred:

"By Mr. Teter [appellant's attorney]:

"Q. How long did you keep him up in the Dallas City Jail?

"A. I don't have any idea how long he stayed there before he was transferred to the County.

"Q. Is it not a fact, Officer, that the Dallas police kept him up in the jail for some fifteen days—

"A. I don't know.

"Q. —before they delivered him to the Dallas County Sheriff, who then put him in Parkland Hospital for treatment to recover from the beatings that you gave him?

"MR. KEASLER [prosecutor]: *Oh, Judge, we object to that, he is in bad faith like usual and we object to it. That is a bunch of garbage and he knows it.*

"THE COURT: I sustain it. Ladies and Gentlemen, you will not consider that for any purpose, the statement Mr.

Teter made, not for any purpose. Now, don't repeat that statement, Mr. Teter.

"MR. TETER: Your Honor, at this time we would make a motion for a mistrial based upon the comment of Mr. Keasler that I was in bad faith as usual, that is a derogatory comment and it is striking at the Defendant over counsel's shoulder and we object to it and would ask for a mistrial.

"THE COURT: Denied." (Emphasis added.)

■ The prosecutor's remark was obviously improper. One of appellant's contentions was that the police had beaten him in order to obtain a confession. At this point in the trial, during the State's case in chief, the appellant had not had an opportunity to offer any evidence on this question. Later, he did offer such evidence. Appellant had a right to cross-examine the officer on this issue.

■ The prosecutor's comment was calculated to convey to the jury the impression that appellant's counsel acted in bad faith as a matter of course and hence that any purported evidence of police misconduct was "garbage." It is axiomatic that the State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity. See *Bell v. State,* 614 S.W.2d 122 (Tex.Cr. App.1981); *Jones v. State,* 151 Tex.Cr.R. 115, 205 S.W.2d 590 (1947).

The State concedes that:

"Perhaps the prosecutor should have been a little more temperate in the phrasing of his objection. However, the exasperation of the prosecutor was prompted not only by the usual antics of Mr. Teter (which this Court has no doubt seen on many an occasion), but also by Mr. Teter's actions in this cause."

■ We decline the State's invitation to take judicial notice of defense counsel's "usual antics." We also decline to accept the State's apparent contention that whenever this particular attorney represents a defendant, the State may automatically

make improper comments in front of the jury.

This does not mean that we approve of any improper tactics by defense counsel in this or any other case. The question is whether anything counsel did in this case, prior to the State's improper remark, invited the remark.

The State calls our attention to five actions by defense counsel that allegedly invited the remarks in question:

1. Defense counsel employed excessively dilatory tactics in an attempt to avoid going to trial.
2. Defense counsel challenged the good faith of the State in announcing ready, although he obviously had no basis for so doing.
3. Defense counsel argued with the court and insisted that if he were appointed to represent appellant on another case to be tried at a later date his fee would be $5,000.00.
4. Defense counsel improperly voir dired the veniremen by misleading them as to what the law is.
5. Defense counsel attempted to persuade the jury that the State's objections and the court's rulings were based on "personality conflicts" and not the law.

■ The first three actions took place at a pre-trial hearing held outside the presence of the veniremen. Even if appellant's counsel did engage in all of the alleged actions, we do not see how this "invited" an *improper* remark, on an entirely *different point, in front of the jury,* and well into the trial. A prosecutor cannot stray beyond the scope of the invitation. *Johnson v. State,* 611 S.W.2d 649 (Tex.Cr.App.1981).

In none of these three activities was defense counsel abusive to the prosecutors. His "challenge to the good faith" of the State, consisted in trying to prove, through the testimony of one of the prosecutors, that the State had not in fact been ready to proceed with trial within the 120 day statutory period, despite an announcement of ready that had been filed in the case. In other words, it appears he was trying to rebut the presumption that the State was ready for trial in the manner recommended by our opinion in *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979).

■ Defense counsel did not mislead the veniremen as to what the law is. He stated that nobody can be convicted under V.T.C.A. Penal Code, Sec. 31.07 who does not *know* that he lacks the owner's consent to operate the owner's vehicle. Counsel also implied that Sec. 31.07, supra, would be an improper law if it *did* allow conviction of an accused who did not *know* he lacked the owner's consent.

The State did not object at voir dire that this amounted to a misstatement of the law, but rather remarked that appellant's counsel was making an obvious point. There *was* a brief disagreement over who has the burden of proof with respect to a mistake about the owner's consent, but this argument was conducted in an orderly manner. We do not believe that defense counsel's mistaken belief on a point of law, expressed during voir dire, gives the State carte blanche to strike at the defendant over the shoulders of his counsel later in the trial.

Defense counsel did not tell the veniremen that the State's objections and the court's rulings were based on personality conflicts. After a sharp exchange between defense counsel, the State, and the trial court, defense counsel stated that there were obviously some personality conflicts in the courtroom and that he hoped the veniremen would not hold this against the defendant. When the trial court told the defense counsel to drop the subject he did so.

■ Though the proper method of pursuing an objection until an adverse ruling is to (1) make an objection; (2) request an instruction to disregard; (3) make a motion for a mistrial, the method employed by appellant's counsel in the present case is sufficient to preserve possible error for review. *Koller v. State,* 518 S.W.2d 373 (Tex.Cr.App.1975).

■ The prosecutor's comment was manifestly improper, harmful, and prejudicial, thus constituting reversible error. *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr. App.1972).

The prosecutor's comment was not an isolated incident, but was indicative of what transpired throughout the trial.

■ In his tenth ground of error, for instance, appellant complains of another improper comment by the prosecutor. During cross-examination of a witness the following occurred:

"Q. Now, everything was going pretty smooth with Ronald Watkins until there was a newspaper article on the front page of our local newspaper about a gambling operation; isn't that correct?

"MR. KEASLER: Now Judge, now we are getting into what is read in the newspaper, I don't know that the Court has the time to give Mr. Ethics—Mr. Teter a crash course in evidence here but we are going to object to what was read in the newspaper or anything else.

"THE COURT: I sustain the objection. I want to get down to this lawsuit that we are trying now.

"MR. KEASLER: If he ever will—

"MR. TETER: Your Honor, we have to, at this time, make our objection known to the Court based upon the comment of the prosecutor referring to me as Mr. Ethics.

"THE COURT: Well, I didn't—all right.

"MR. KEASLER: Slip of the tongue, Judge, certainly a slip of the tongue.

"THE COURT: The jury will disregard. Go ahead.

"MR. TETER: Ask for a mistrial.

"THE COURT: Denied."

In the State's closing argument one of the prosecutors stated:

"MS. LUDWICK: Thank you, Your Honor, I won't be needing that much. May it please the Court, Ladies and Gentlemen. I want to apologize for what you have seen in this Courtroom in the past three days and you can determine whose fault it is that it happened but we are not allowed to strike at this Defendant over the shoulders of his counsel. You must consider the evidence that you have heard in this case regarding this man using that car that belonged to Deborah Richards without her consent regardless of what Mr. Teter has done in this Courtroom and regardless of what is done to Mr. Teter after the conclusion of this trial. It is nothing for you to consider at this time.

"MR. TETER: Your Honor, we would object to what might be done with me after they leave this Courtroom, it is not proper.

"THE COURT: Overrule the objection. Go ahead."

While professing to tell the jury to consider only the facts of the case, the prosecutor obviously implied that defense counsel's improper behavior would result in disciplinary action to be taken against him after trial. Previously this prosecutor had requested, *in front of the jury,* that defense counsel be held in contempt for unethical conduct, because he allegedly violated or attempted to violate a motion in limine.

The effect of these remarks was to leave the impression that the entire defense effort was ethically tainted.

The prosecutors also made the following comments during closing argument:

"MS. LUDWICK: It is almost ludicrous that it is so easy to steal from people. It is also almost ludicrous that he [appellant] is so crummy at it that he has gotten convicted six times already for stealing, forgery and burglarizing people's homes. I mean, this is the kind of guy we are dealing with. Mr. Teter has pleaded to you in his utmost earnest fashion, please do not send this man to the penitentiary even though he has shown you he has never done a decent, credible thing in his life and you can tell that by his little girlfriends, sitting all over the place, all of them thinking he is in love with them and going to marry them—

"MR. TETER: Your Honor, we object to that, that is not a reasonable deduction from the evidence.

"THE COURT: Overruled.

"MR. KEASLER: And I thought Mr. Teter wasn't going to have a chance to argue anymore, lo and behold, Lazarus is rising from the dead.

"THE COURT: Don't—

"MR. TETER: May we object to Mr. Keasler's remark?

"THE COURT: Don't talk about that, go ahead.

"MR. TETER: May we request a mistrial?

"THE COURT: No, you may not ask, overrule your motion."

 Here, defense counsel simply objected to the improper argument of the State. It is the duty of the State and the defense to confine the argument to the record. *McKenzie v. State,* 617 S.W.2d 211 (Tex.Cr.App.1981). The prosecution then insinuated that defense counsel's objection was a ruse to allow further argument beyond defense counsel's allotted time.

There are numerous other instances of improper comments in the presence of the jury on the State's part.[1]

The judgment is reversed and the cause is remanded.

---

1. While defense counsel's conduct may not be condoned in this trial, the prosecutors clearly went beyond the limits of proper response, as evidenced by the foregoing arguments and comments.