Bud Jay SAWYER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00871–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 9, 1994.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson and Steve Baldassano, Harris, for appellee.

Before OLIVER–PARROTT, C.J., and ANDELL and HEDGES, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Bud Jay Sawyer, guilty of capital murder, and the trial court assessed punishment at life in prison. In three points of error, appellant complains that the trial court erred in permitting the prosecutor to make improper jury arguments. We affirm.

### Facts

On the evening of November 16, 1992, Lee Rayford was driving south of Parker Street in Houston, Texas. Rayford was a street dealer of crack cocaine. Sometime between 10:00 and 10:30 p.m., Rayford offered a ride to Eric Williams, who was walking along the side of the street. Williams got in the car with Rayford and a woman named Dee Dee. As the three neared the intersection of Parker and Shady Lane, Rayford saw appellant standing at a pay phone outside the Happyland convenience store. Rayford parked behind appellant's truck. Rayford got out of his truck and sold appellant a rock of cocaine .in exchange for $20 in food stamps. Afterwards, Rayford dropped Williams at the Park Square Apartments.

Around midnight, Williams was walking to his mother's house when Rayford again offered him a ride. Williams got into the back seat of the car. Rayford was driving, and George Smith was riding in the front passenger's seat. As the three men were driving, Rayford again saw appellant's truck. Ray-ford flashed his lights to get appellant's attention and stopped near appellant's truck.

Appellant asked Rayford if he had more drugs. Rayford replied that he did and asked if appellant had any money. Appellant said that he had $20 and then got out of his truck. Williams testified that when he got out of his truck, appellant had a gun in his hands. Appellant walked over to Rayford's car and leaned inside the passenger's side window. In a threatening tone, appellant told Rayford he wanted more cocaine for his money than he had received the last time. Williams testified that appellant was clearly under the influence of cocaine: his eyes were glazed and bloodshot, his body was shaking slightly, and he obviously craved more cocaine.

After Rayford and appellant argued for two or three minutes, appellant said that he was going to kill all three occupants of the car. Appellant then shot Smith twice in the chest, shot Rayford twice, and shot Williams once below his right hip. Rayford and Smith died. Williams survived and testified at trial. Appellant testified that he acted in self-defense.

### Standard of review

Permissible jury argument is limited to four categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988); *Bell v. State*, 724 S.W.2d 780, 802–03 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Reversible error occurs only when statements made to the jury are so extreme and manifestly improper, or when new facts harmful to the accused are injected into the proceedings, so that the defendant is deprived of a fair and impartial trial. *McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App. 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990).

Appellant acknowledges that defense counsel did not lodge proper or timely objections to any of the prosecutor's remarks of which he now complains on appeal. Therefore, unless the arguments of the prosecutor are so

prejudicial that an instruction from the trial court would not have cured the harm, defense counsel's failure to timely object waives any error. *Curtis v. State,* 640 S.W.2d 615, 618 n. 4 (Tex.Crim.App.1982); *Plunkett v. State,* 580 S.W.2d 815, 823 (Tex.Crim.App. 1979) (op. on reh'g); *see McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

### Point of error one

■ In his first point of error, appellant complains that the prosecutor accused the defense counsel of arguing to the jury that it was permissible to kill "bad guys" who had been in trouble with the law. He asserts that in permitting this error, the trial court allowed the prosecutor "to strike at the appellant over defense counsel's shoulders." This arcane language is lifted from *Summers v. State,* 147 Tex.Crim. 519, 182 S.W.2d 720, 722 (1944), and has been quoted in many subsequent cases. *McGee,* 774 S.W.2d at 238. In plain English, appellant is complaining that the prosecutor was improperly allowed to attack him by contending that trial counsel's argument of self-defense was made insincerely and in bad faith.

During jury arguments, appellant's trial counsel repeatedly reminded the jury that the victims were drug dealers. He implied that their sale of drugs had corrupted appellant. He then argued:

> Bud Sawyer had every reason in the world and especially Bud Sawyer had every reason in the world to be apprehensive at any time in the broad open daylight with a person such as Lee Rayford. I don't mean that the man was necessarily inherently evil when he was a child, but whatever his life experiences had been the man got himself into trouble any number of times. As testified to by Sergeant King, he had been convicted, I believe, at least five or six, maybe not that many, offenses of resisting. Lee Rayford had been convicted on a weapons charge.
>
> Now, do you believe Rayford with his background would be out in the early morning hours selling crack along with two other sellers of crack without being armed? That has got to be consistent with his history, that he had a pistol on him on the occasion in question.[1]

> .    .    .    .    .

> Do you really believe, after getting a feeling perhaps for the character or personality from their testimony and the evidence in this case, that George Smith would hesitate to take a shot at you? Do you really believe from the evidence in this case that high on crack Eric Williams would not take a shot at you under the right circumstances?
>
> Now, I am always, and perhaps you are too, fascinated by medical testimony. I want you to look at these pictures of the bodies. I know it may be revolting to you, but there are certain things on these bodies in these pictures having to do with tattoos or whatever they are that are basically indicative of the character of the people that were involved in this.
>
> And I am not saying Bud Sawyer had any right to deliberately kill them. I am just saying by taking a look at their dead bodies closely you can see where Bud Sawyer might have been afraid of them under the circumstances.

Appellant takes exception with the following argument made by the prosecutor:

> [Prosecutor]: You know, the Defense Attorney would have you believe or maybe want you to believe that, you know, anybody that's ever been in trouble before, anybody that's not a perfect citizen, it's just open season on these people. I could outright now go kill Williams and say, hey, he pled guilty to retaliation once, you know he's a bad guy, I have never been convicted, I am a good guy so I can go kill him. It's not open season. Everybody should be protected.
>
> [Defense Counsel]: Defense Counsel has never intimated that at all in his argument or otherwise.
>
> [Prosecutor]: Okay, I will withdraw that or strike it or whatever.

---

1. The police did not recover any weapons from the car or from the victims.

■ Appellant contends these remarks were an improper attack upon his counsel by which the prosecutor invited the jury to discredit his defense. We agree that the State may not attack a defendant through his counsel by accusing the counsel of maintaining a position with insincerity or in bad faith. *McGee,* 774 S.W.2d at 238; *Fuentes v. State,* 664 S.W.2d 333, 335 (Tex.Crim.App.1984). There is a difference, however, in this impermissible attack and legitimate rebuttal to an argument of opposing counsel. We believe that the prosecutor's argument fell into the latter category.

The cases cited by appellant to support his argument involve personal attacks by the prosecutor that overtly call into question the ethics of the defense counsel and the credibility of the defense. For example, in *Fuentes,* the prosecutor made several comments directly attacking the defense counsel. The prosecutor's remarks included (1) telling the judge during an objection that defense counsel was acting in bad faith as usual; (2) calling the defense counsel "Mr. Ethics" in front of the jury; (3) telling the jury not to consider what will be done to the defense counsel after the conclusion of trial; and (4) asking in the jury's presence that the defense counsel be held in contempt for unethical conduct when he attempted to violate a motion in limine. 664 S.W.2d at 335–37.

In *Bell v. State,* 614 S.W.2d 122, 123 (Tex. Crim.App. [Panel Op.] 1981), also cited by appellant, the prosecutor stated that the defendant's counsel, as a criminal defense lawyer, didn't have the same duty as a State's attorney. The prosecutor told the jury that defense counsel's duty was to see that his client got acquitted "even if it means putting on witnesses who are lying." *Id.* In *Gomez v. State,* 704 S.W.2d 770, 772 (Tex.Crim.App. 1985), during final argument, the prosecutor accused the defense counsel of bringing witnesses into court to manufacture evidence and of doing anything to get his client "off the hook." The prosecutor's remarks invited the jury to discredit the defense because the defense counsel would condone perjury, if necessary, to accomplish his paid objective. *Id.*

In this case, the prosecutor did not engage in a personal attack of the defense counsel; he did not impugn the character of defense counsel, nor did he cast aspersions on his integrity or ethics. Instead, his remarks were designed to rebut, refute, or contradict an argument that had been a centerpiece of the defense closing. *See Gaddis,* 753 S.W.2d at 398. Appellant's trial attorney had repeatedly argued to the jury that the victims were bad characters and drug dealers of whom appellant had every reason to be afraid. The prosecutor's argument was nothing more prejudicial than an attack on the validity of this argument and its rationale. He properly responded to the argument of appellant's trial counsel and did not cross into the territory forbidden by *McGee.* Therefore, his remarks did not constitute reversible error.

We overrule point of error one.

### Point of error two

■ In point of error two, appellant contends that the trial court erred in permitting the prosecutor to argue matters outside of the record when the prosecutor urged the jury to discount appellant's explanation for why he shaved his beard in jail before attending a line-up.

During cross-examination of appellant, the prosecutor asked about his tonsorial activity in jail:

Q: And could you go ahead and explain to the members of the jury why it is you shaved your beard right before the lineup?

A: When I went to jail I got in—there was a bunch of people that I didn't know. I didn't want to look like an oddball in there. I wanted to look as square as possible. I wanted to shave and I didn't— I was around a bunch of different people. I didn't know what to expect of them. I wanted to clean up, look respectable. Figured nobody would mess with me.

. . . . .

Q: Did you know that might affect the lineup? Did you think maybe this is sort of hiding some kind of evidence, that is, what you look like? Did you think that?

A: I was shaving when the man told me I was going to the lineup.

During closing argument, the defense counsel stated the following:

Now, ad nauseam—and I am not insulting my opponent—you heard about the beard as if somebody is going to not be identified in a lineup because they have shaved their beard off. I never saw such expansion on such a negligible factual point.

Bud Sawyer told you that he shaved his beard because he didn't want to look out of place like a hippie in a circumstance in which he was surrounded in the jail by dangerous people. It was the use of his brain, rarely has he done it in his life, that he got rid of the beard so he would not be considered a hippie by the other prisoners when he was there.

During his final argument, the prosecutor responded:

And then this whole beard thing. I just think this is the greatest thing, you know, I hate to beat a dead horse. You see the picture in jail. There's a freshly cut face. He has a couple of tattoos'. . . .

In any case, here is the defendant. I think his story is—I think his lawyer first said he did it for sanitary reasons because jail is a dirty place. He tells you he just did it because he wanted to not look tough.

It seems to me that most reasonable people, if you went to jail, first of all: Hi, I'm in for D.W.I.; hi, I'm in for theft; I am in for capital murder.

Well, all right, you stay there. I will be over here.

The capital murder guy, he wants to look less tough? I mean, he wants to shave to the pain of his face because he doesn't want to look tough? I mean, seems to me he would want to look as tough as you could, especially if they put you in with the other capital murderers.

Appellant concedes that the prosecutor had the right to ask him on cross-examination whether he believed that shaving his beard was tantamount to hiding evidence. However, appellant argues that by urging the jury to discount his explanation for shav-ing, the prosecutor injected new facts into evidence that were harmful to him and injected his personal beliefs into the case.

■■■ A prosecutor may not use closing argument to present new evidence before the jury that is outside the record and prejudicial to the accused. *Everett v. State,* 707 S.W.2d 638, 641 (Tex.Crim.App.1986). References to facts that are neither in evidence, nor inferable from the evidence, are improper. *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App. 1990). A prosecuting attorney is permitted to draw all inferences that are reasonable, fair, and legitimate from the facts in evidence, but he may not use jury argument to get before the jury, either directly or indirectly, evidence that is outside the record. *Id.* (citing *Jordan v. State,* 646 S.W.2d 946, 948 (Tex.Crim.App.1983)). The rule permitting logical deductions from evidence does not permit logical deductions from non-evidence. *Berryhill v. State,* 501 S.W.2d 86, 87 (Tex.Crim.App.1973).

We disagree with appellant that the prosecutor's remarks injected new facts outside the record. Appellant testified that he shaved his beard before attending the line-up and explained why he did so. His trial counsel reiterated his explanation during closing argument. The prosecutor asked the jury to reject appellant's explanation and infer what was, in his opinion, a more reasonable explanation. The prosecutor drew a reasonable inference for appellant's behavior from the facts in evidence; therefore, his remarks were proper. *Borjan,* 787 S.W.2d at 57.

We overrule point of error two.

### Point of error three

■■■ In point of error three, appellant contends that the trial court erred in permitting the prosecutor to argue matters outside the record when he urged the jury to discount appellant's testimony that Rayford put a gun in his face for the reason that appellant had not related this detail to his wife and father-in-law immediately after the shootings.

At trial, appellant testified that when he walked to the side of Rayford's car, he saw Rayford aiming a gun straight at him. In

response, he immediately pulled out his gun and began shooting. In his pretrial written statement, however, appellant had stated that Rayford pointed the pistol right at his face and ordered him to hand over his wallet.

The record shows that appellant went home after the shootings and took his wife and children to his father-in-law's house. Appellant told his wife that he was nervous because he had shot his gun in the air to scare away some people. He told his father-in-law that it "looked like one of them was coming up with a gun," so he began shooting.

In his closing argument, the prosecutor stated:

> To his father-in-law it's—I forget what his father-in-law said. His father-in-law said it looked to me as if one of them was coming up with a gun. It was a lot different. There was a Derringer in my face. And would you think that's what his father-in-law said? He swore to it, read it over. I gave him a chance to read it on the witness stand. That's what he said. You would think if somebody put a gun right to your face, the first thing you would do is go home and tell your wife and father-in-law the guy had a gun in my face. It's pretty descriptive, pretty accurate.

> He tells his father-in-law: I think one of them is coming up with a gun. He gets the story a little better as it goes along to get it justified. He tells his wife whatever, that she thinks he shot in the air, according to his statement.

Appellant argues that with this argument the prosecutor improperly injecting matters outside the record into the case. We disagree. Appellant's different renditions of how the shootings occurred were in evidence. What appellant told his family members immediately after the shootings occurred is also in evidence. The prosecutor argued that the jury should make what was, in his view, a reasonable deduction from the evidence in determining which version of the facts surrounding the shootings was the truth. His remarks to the jury were proper. *See Bowden v. State,* 628 S.W.2d 782, 789 (Tex.Crim. App.1982).

We overrule point of error three.

We affirm the judgment of the trial court.