**Aubrey Lee VINCENT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–94–00873–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 15, 1997.

Douglas M. O'Brien, Houston, for Appellant.

Lester Blizzard, Houston, for Appellee.

Before SCHNEIDER, C.J., and O'CONNOR and HEDGES, JJ.

## OPINION

HEDGES, Justice.

Aubrey Lee Vincent, appellant, was found guilty by a jury of engaging in organized criminal activity and was sentenced by the trial court to ten-years imprisonment, probated, and a $10,000 fine. *See* Act of May 27, 1991, 72d Leg., R.S., ch. 555, sec. 1, § 71.02, 1991 Tex.Gen.Laws 1968, 1969 (TEX. PENAL CODE ANN. § 71.02, since amended).

He brings five points of error, alleging error in the indictment, in the admission of evidence, and in the State's closing argument. We affirm.

Appellant managed the parts department for Archer Chrysler–Plymouth, Inc., an automobile dealership. The City of Houston had a contract with the dealership to supply parts for City vehicles, including police vehicles. Wendell H. Hightower, the shop foreman of the Houston Police Department's fleet maintenance division, prepared purchase orders for parts that the City never received ("phantom parts"). Appellant provided incorrect invoices so that the dealership could charge the City for the phantom parts. Once the City paid the dealership, the dealership paid appellant and Hightower.

### Statute of Limitations

In point of error one, appellant claims that the trial court erred in overruling his motion to quash the indictment, which was based on the statute of limitations. The May 18, 1986 indictment [1] charged appellant with committing a continuing theft, in combination with others, between May 8, 1986 and March 15, 1990. Appellant claims that the five-year statute of limitations for theft bars charges for anything that occurred before May 18, 1988. *See* Act of May 23, 1991, 72d Leg., R.S., ch. 565, § 6, 1991 Tex.Gen.Laws 2003, 2004 (TEX.CODE CRIM.P.ANN. art. 12.01(4)(A), since amended); TEX.CODE CRIM.P.ANN. art. 12.03 (Vernon Supp.1997).

■ We disagree with appellant's argument. Appellant was indicted and convicted of engaging in organized criminal activity, which is a continuing offense. TEX.PENAL CODE ANN. § 71.03(4) (Vernon 1994); *see Barnes v. State,* 824 S.W.2d 560, 562 (Tex. Crim.App.1991). The offense, therefore, was complete on March 15, 1990, within the five-year statute of limitations.

We overrule point of error one.

---

1. This indictment was the amended indictment on which appellant was tried.

### Specific Allegations in Indictment

■ In point of error two, appellant claims that the trial court erred in overruling his motion to quash the indictment because the indictment does not identify the specific acts of theft that were aggregated to exceed $20,-000. Appellant does not cite any authority requiring the State to identify the specific acts of theft in the indictment; he instead cites to a case that recommends a "more preferable method of pleading." *Romine v. State,* 722 S.W.2d 494, 499 (Tex.App.—Houston [14th Dist.] 1986), *pet. ref'd per curiam,* 747 S.W.2d 382 (Tex.Crim.App.1988).[2]

■ A defendant has a right to notice that is adequate to prepare his defense. *Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App. 1986); *Mills v. State,* 802 S.W.2d 400, 403 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). The Court of Criminal Appeals has formulated the following test:

> The first step in answering this question [regarding adequate notice] is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

*Adams,* 707 S.W.2d at 903.

Appellant's indictment stated the following:

> The duly organized grand jury ... presents that ... [appellant] ... did unlawfully with intent to establish, maintain and participate in a combination and in the profits of a combination, ... commit the felony offense of theft over twenty thousand dollars, in that [appellant], on or about **between May 8, 1986 through March 15, 1990,** pursuant to one scheme and continuing course of conduct, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, namely, money, and the total value of the property so obtained was over twenty thousand dollars, owned by the **CITY OF**

---

2. The State did not reply to appellant's point of error two.

HOUSTON, hereafter styled the Complainant, with intent to deprive the Complainant of the property.

When the State pleads an aggregated theft, it is not necessary for the State to allege each separate theft as long as it pleads the range of aggregated values. *Whitehead v. State,* 745 S.W.2d 374, 376 (Tex.Crim.App. 1988); *Green v. State,* 880 S.W.2d 797, 800–01 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

We overrule point of error two.

### Improper Jury Argument

In points of error three and five, appellant contends that the State committed reversible error in two statements made during closing argument.

In point of error three, appellant claims that the trial court erred by not granting a mistrial based on the following jury argument by the State:

[STATE]: Certainly [the defendants are] entitled to a fair trial. And I point out to you, [appellant] got a fair trial in this case and got the best defense that Mr. Archer's money could buy.

[APPELLANT]: Objection, Your Honor. Object. I would object to that. That's striking at the defendant over the shoulders of his counsel. It's an improper argument. There is absolutely no testimony concerning legal fees to attorneys.

THE COURT: Sustained.

[APPELLANT]: And I object to that. I'd ask the jury be instructed to disregard that improper argument by counsel.

THE COURT: Members of the jury, I'm going to instruct you all to disregard the last statement by the prosecutor.

[APPELLANT]: We move for mistrial, Your Honor.

THE COURT: Denied.

[STATE]:—and Mr. Archer purchasing the benefit or the use of the experts that came in and testified; because you heard their

testimony, as well, that they were paid by Mr. Archer to testify.

We agree with appellant that the State's argument was improper. *See Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App. 1995); *Sawyer v. State,* 877 S.W.2d 883, 886 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (holding argument that strikes at defendant over shoulders of defense counsel is improper).

Appellant argues that we should reverse the trial court's judgment even though the trial court sustained his objection and instructed the jury to disregard the State's argument. *See Gomez v. State,* 704 S.W.2d 770, 771–72 (Tex.Crim.App.1985) (holding argument that strikes at defendant over shoulders of defense counsel can be reversible error even if trial court sustains objection and instructs jury to disregard). In *Orona v. State,* the Court of Criminal Appeals held that such improper comments must be evaluated for harm under Texas Rule of Appellate Procedure 81(b)(2). *Orona v. State,* 791 S.W.2d 125, 128–30 (Tex.Crim.App.1990); *see Rische v. State,* 834 S.W.2d 942, 950 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

■■■ To make this determination, we must calculate the probable impact of the error on the jury in light of the whole record. *Orona,* 791 S.W.2d at 130; *Sosa v. State,* 845 S.W.2d 479, 484 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). We consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the error was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989); *Sosa,* 845 S.W.2d at 484.

**The source of the error.** The State's jury argument was the source of the error.

**The nature of the error.** The State's comment may have tended to suggest that appellant's defense was somehow tainted because a co-conspirator paid his attorney.[3]

---

**3.** The State argues that it was merely complimenting appellant's attorney on his skill and advocacy.

This argument was not nearly as egregious as the comments made by the State in *Gomez*. 704 S.W.2d at 771 (reversible error for State to say that defense counsel was paid to "manufacture evidence" and "get this defendant off the hook").

**Whether the error was emphasized by the State.** The State made no further comments about payment to appellant's attorney. *Cf. Dinkins*, 894 S.W.2d at 357.

**The error's probable collateral implications.** The implication of the comment was that a co-conspirator was attempting to buy his own acquittal by providing quality legal counsel for appellant. This implication more likely damaged the co-conspirator rather than appellant.

**The weight a juror would probably place on the error.** We do not believe that the jurors placed any meaningful weight on the State's comment. The trial court sustained appellant's objection and instructed the jury to disregard the statement. We must presume that jurors obey the instructions of the court. *DeBlanc v. State*, 799 S.W.2d 701, 711 (Tex.Crim.App.1990).

**Whether declaring the error harmless would encourage the State to repeat it with impunity.** There is no evidence in this record that the State would make similar comments in the future if we hold the error harmless. The State did not engage in a pattern of abuse during this trial, nor did it make further reference to the payment of appellant's attorney.

Applying the *Harris* factors, we determine beyond a reasonable doubt that the State's error made no contribution to appellant's conviction or punishment. According, we hold that the error was harmless.

We overrule point of error three.

■ In point of error five, appellant claims the trial court erred by not granting a mistrial based on the following argument by the State:

[STATE]: And that brings up an interesting part in the charge. Their expert witnesses were so incredible, so unworthy of belief, that he [the trial court] would even refer to them by name in the charge and say, if you want to refer to these documents, you can for the purpose and the sole purpose of determining the credibility of these two expert witnesses.[4]

[APPELLANT]: Your Honor, I would object. That's a misstatement of the law. I'm sure the Court's charge does not make a comment upon the weight of the evidence, as the prosecutor is implying. And I would object to that as being an improper statement concerning what the jury charge states.

THE COURT: Overruled.

[STATE]: I'm simply stating that you have the right to take these documents and the evidence you have heard regarding them and the testimony ... and determine whether or not you believe that based upon these exhibits [State's exhibit 47 A, B, C, and D] there is any credibility to the experts coming in and saying, looks like a man who was duped to me, when clearly from these documents we're showing it [was] going on in other departments.

The State responds that appellant waived any error by failing to object and by failing to ask the trial court to instruct the jury to disregard. The record reflects that appellant did object to the State's argument. When the trial court overruled his objection, he was not required to ask the trial court for an instruction to disregard.

Appellant argues that this jury argument is clearly improper. He contends that when coupled with the error in point of error four, this argument harmed him and denied him a fair and impartial trial. *See* TEX.CODE CRIM. P.ANN. art. 36.14 (Vernon Supp.1997) (trial court may not make comment in charge on

---

4. The instruction in the charge stated:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the credibility of the testimony of [the expert witnesses].

weight of evidence). While we are inclined to agree that the State's argument was perhaps intemperate, appellant cites us no authority to support his contention that it was harmful error. Appellant has not met his burden under Texas Rule of Appellate Procedure 74(f) to adequately brief or argue this point of error. *Ex parte Matthews,* 892 S.W.2d 208, 209 (Tex.App.—Houston [1st Dist.] 1995), *aff'd,* 933 S.W.2d 134 (Tex.Crim. App.1996).

We overrule point of error five.

### Extraneous Offenses

In point of error four, appellant contends that the trial court erred in admitting evidence of five extraneous offenses. The State claimed at trial that it was offering this evidence to impeach appellant's expert witnesses. On appeal, the State initially responds that because the four documents in question (invoices from the dealership), were previously admitted without objection as a part of State's exhibit 3, any objection was waived. We summarily dismiss this waiver argument, however, because an examination of the statement of facts reveals that the four documents are not part of State's exhibit 3:

> THE COURT: The objections will be overruled. State's Exhibits 47 A, B, C, D will be admitted.
> [STATE]: Your Honor, for the record, may I also state these are the four documents that were erroneously referred to as having been in evidence in the box State's Exhibit No. 3 . . . .
> THE COURT: The record will so reflect.

■ Appellant's problem is a different one than waiver. The evidence in question, State's exhibits 47 A, B, C, and D, is not a part of the statement of facts. Attached to the statement of facts is the following note from the court reporter:

> Per appellant attorney's request, because of the voluminous amount of exhibits, I did not attach exhibits because the appellant would have to incur thousands of dollars in copying fees.

Appellant has not satisfied his burden to see that a sufficient record is presented to show error.

We overrule point of error four. Tex. R.App.P. 50(d).

We affirm the judgment of the trial court.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I respectfully dissent.

During final argument, the prosecutor said the appellant "got the best defense that Mr. Archer's money could buy." Archer was a co-conspirator who was awaiting trial.

The majority holds it was improper but harmless under Texas Rule of Appellate Procedure 81(b)(2) and *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). I disagree with the majority's harmless error analysis on the following points.

**The nature of the error.** The prosecutor's comment informed the jury that a co-conspirator paid for the services of the appellant's lawyer. The comment was outside the record; it was not a casual slip of the tongue. The prosecutor injected the information into the record to bolster his conspiracy evidence—not only did the appellant conspire with Archer to break the law, Archer was playing a behind-the-scene role in the trial by financing the appellant's trial. In addition, the prosecutor conveyed to the jury the information that the appellant and Archer were still working together—to convict Archer, the jury should find the appellant guilty. The prosecutor's comment was similar to comments made by the prosecutor in *Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Crim.App. 1985) (reversible error for the prosecutor to say defense counsel was paid to "manufacture evidence" and "get this defendant off the hook").

**The error's probable collateral implications.** The prosecutor's comment invited the jurors to view the case as one where a rich person was attempting to buy justice by helping a co-conspirator get acquitted. The comment prejudiced the jurors against the appellant by painting him as a man who thinks he can beat the system by having a crafty lawyer paid for by a co-conspirator.

**The weight a juror would probably place on the error.** The majority states that it does not believe the jurors placed any meaningful weight on the prosecutor's comment. Under Tex.R.App.P. 81(b)(2), if there is *any* chance the comment played a role in the jury's deliberation, we must reverse. *See Atkinson v. State*, 923 S.W.2d 21, 26 (Tex. Crim.App.1996); *Massey v. State*, 933 S.W.2d 582, 587 (Tex.App.—Houston [1st Dist.] 1996, no pet.) To my mind, it is *probable* that jurors placed a great deal of weight on the prosecutor's comment. The public's poor opinion of lawyers, aggressively fueled by the media, is well known. There is widespread belief that wealthy people with "slick" lawyers can literally get away with murder. Here, the prosecutor created the issue in the minds of the jurors that the master co-conspirator, who owned the dealership involved in the conspiracy, could help his own case by paying a lawyer to get the appellant off.

**Whether declaring the error harmless would encourage the State to repeat it with impunity.** There is a strong possibility the State will make similar comments in the future if we hold the error was harmless. This was not merely vigorous trial advocacy on the part of the State; the prosecutor introduced irrelevant but *harmful* evidence from outside the record in his final argument. On appeal, still showing no remorse, the State argued that the prosecutor simply complimented the quality of the appellant's lawyer. The comment clearly was not a compliment; it injected into the case the information that the lawyer in this case was the hired gun of the master conspirator.

Applying the *Harris* factors, I do not see how we can determine beyond a reasonable doubt that the State's error made no contribution to the appellant's conviction or punishment. *See Atkinson*, 923 S.W.2d at 26; *Massey*, 933 S.W.2d at 587. According, I would hold the error was not harmless, sustain point of error three, reverse the judgment of conviction, and remand the cause to the trial court for a new trial. *See* Tex.Code Crim.P. art. 44.29(a).