

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1753-06

**ANN CAROLINE YORK, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

JOHNSON, J., delivered the opinion of the Court, joined by MEYERS, PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ. KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ. joined.

### O P I N I O N

After a trial by jury, appellant was convicted of driving while intoxicated (DWI). The trial court imposed a sentence of 180 days in jail and a $500 fine, suspended the jail sentence, and placed appellant on community supervision for one year. The court of appeals affirmed the conviction and sentence. *York v. State*, No. 14-05-00448-CR (Tex. App.–Houston [14th] 2007). We granted appellant's petition for discretionary review. We reverse the judgment of the court of appeals.

On direct appeal, appellant's sole point of error claimed, "The trial court erred in denying [her] multiple requests for a mistrial after the prosecutor repeatedly ignored the court's rulings and

admonitions during closing arguments and continued making improper arguments." The court of appeals discussed the jury arguments at issue. It noted that there were "only" seven instances during the state's closing argument at the guilt phase, they occurred at the beginning of the state's argument, and appellant's objections for improper jury argument were each sustained and followed by an instruction to disregard. *York*, 2006 Tex. App. LEXIS 9200 at * 10. The court of appeals ultimately agreed that "the prosecutor's repeated refusal to heed the trial court's rulings was highly improper," but concluded that the conduct "does not rise to the level of reversal." *Id*. at * 9-10. It specifically said that "although the prosecutor engaged in improper arguments, . . . the repetitive nature of the argument was not so prejudicial as to require a mistrial." *Id*. at * 10-11.

We granted appellant's two grounds for review which assert that the court of appeals erred:

(1) in failing to consider or address all of the factors argued by Appellant as reasons why the instruction to disregard did not cure the flagrantly improper jury argument;

(2) in finding that the trial court did not err in failing to grant a mistrial when the distinction of prior Court of Criminal Appeals decisions claimed by the Court of Appeals are directly contrary to other Court of Criminal Appeals decisions and decisions of the same and other Courts of Appeals.

The court of appeals quotes extensively from the record and delineates the particulars of the prosecutor's jury arguments that are at issue, and appellant's objections to them and the trial court's rulings. *Id*. at * 2-6. The record reflects that, included within the challenged argument that the court of appeals acknowledged was "highly improper," the state made multiple attacks on appellant's attorney, including assertions that counsel had misled the jury as to the meaning of "normal use"of appellant's physical and mental faculties.

MR. PFEIFFER: Defense Counsel is asking you to follow the law, I'm asking you to do the same. This is the jury charge. This is what–this is from the judge. It tells you what the law is. This is what you're to be guided by when you go back to

the jury deliberations room. This is not your normal jury charge. This is what I have right down here defines what normal –

MR. TRICHTER: Objection as to what's normal or abnormal.

THE COURT: Sustained.

MR. TRICHTER: Move to instruct the jury to disregard.

THE COURT: Jury to disregard.

MR. TRICHTER:  Move for a mistrial.

THE COURT: Be overruled.

MR. PFEIFFER: This isn't normally defined right here. I fought tooth and nail to get this in here.

MR. TRICHTER: Objection as to what tooth and nail [sic], move to strike.

THE COURT: The jury will disregard. It will be overruled.

MR. PFEIFFER: Because during the entire trial, the voir dire all the way up through closing arguments, you've been mislead [sic] as to what normal use is.

MR. TRICHTER: Objection, Your Honor, now he's striking over at me –

THE COURT: Sustain the objection.

MR. TRICHTER: Move for a mistrial.

THE COURT: Be overruled.

MR. TRICHTER:  Ask the Court to instruct the jury to disregard.

MR. PFEIFFER: I want to talk about what normal use is.
    During this trial, you heard Defense counsel suggest that, and even through cross-examination of these officers, "Do you know what this defendant's normal use is?" Throughout this entire trial, it's been about, according to Defense counsel, what this particular Defendant's normal use is. That is not the law. Think about that for a second. Think about that burden if that was the law on me. I had to prove, according to Defense counsel, what this particular Defendant's normal use is. That's impossible. . . . That's why it's not our law.

We have it right down here. Normal use means a manner in which the normal, non-intoxicated person would be able to use his faculties, not necessarily Ms. York. I don't have to prove Ms. York's normal use. That is impossible. How do I know that? How do we know that? Cases are appealed and taken, and they come back with the law and gives [sic] us this interpretation right here.

MR. TRICHTER: Objection, there's been no testimony to that.

THE COURT: Sustained.

MR. TRICHTER: Move to have the jury disregard the Prosecutor's comments.

THE COURT: Jurors will disregard. Be denied.

MR. TRICHTER: Ask for a mistrial.

THE COURT: Be denied.

MR. PFEIFFER: There's [sic] laws that guides [sic] us to take one – interpret normal use. In that particular case, the attorney who took it up on appeal is none other than, Mr. Trichter –

MR. TRICHTER: Your Honor, now I ask again for a mistrial –

THE COURT: Sustain the objection.

MR. TRICHTER: Move to strike the jury –

THE COURT: The jury will disregard.

MR. PFEIFFER: If there is anyone –

THE COURT: Just a minute, Wait till I get through ruling.

MR. PFEIFFER: Yes, Your Honor.

MR. TRICHTER: Your Honor, I ask for instructions –

THE COURT: The jury will disregard the last statement.

MR. TRICHTER: I ask for a mistrial.

THE COURT: That will be overruled.

MR. PFEIFFER: And if there's anyone –

THE COURT: And Mr. –

MR. PFEIFFER: Pardon.

THE COURT: Argue the facts in this case not what happened not in front of the jury.

MR. PFEIFFER: Yes, sir.
And if there is anyone in Harris County, Texas that knows what normal use is, it's Gary Trichter because he took it up on appeal.

MR. TRICHTER: Your Honor, I move –

THE COURT: That may be unsworn testimony.

MR. PFEIFFER: Your Honor, I would just ask for a little leeway.

THE COURT: That will be overruled and the jury will disregard that.

MR. TRICHTER: I ask the Court to instruct the Prosecutor to remain within the proper bounds of argument.

THE COURT: Well, I just asked him to do that.

MR. PFEIFFER: I'll do that, Your Honor.

THE COURT: Yes, sir.

MR, PFEIFFER: And for him to suggest otherwise as to what the law is, is shameful.

MR. TRICHTER: Your Honor, again, he's attacking me again.

THE COURT: Sustain the objection. Jury will disregard. Motion for mistrial is overruled.

MR. PFEIFFER: When you go back to deliberations, consider that. And I ask you to. He represents Caroline York.[1]

Reporter's Record, Vol. III, pp. 13-18.

---

[1] This series of objections and rulings comprises the first five pages of a ten-page closing argument.

The prosecutor's "highly improper" jury argument continued in spite of multiple sustained objections by appellant, multiple instructions to disregard by the trial court, and specific instructions from the trial court to argue only the facts of the case. Appellant argues that such repetitive improper jury argument was a direct attack on defense counsel's integrity, honesty, and character, and accused defense counsel of manufacturing the law and affirmatively misleading the jury about it. She asserts that the prosecutor's argument "was that trial counsel knew that the law was not as he had led the jury to believe[,]" and that it was a blatant claim that trial counsel was dishonest.

Appellant points to the multiple sustained objections to the prosecutor's jury argument, which were accompanied by the trial court's instructions to disregard, and a direct instruction to argue the facts, all of which were ignored by the prosecutor, who continued to argue what he wanted to argue. She suggests that "[w]hen an officer of the court ignores the trial court with impunity, there is little reason to believe that a jury would feel any need to follow instructions that were already being ignored." (Appellant's Brief, p. 20.) She also suggests that there is no reason to believe that the jury would have taken the trial court's instructions seriously because they saw the prosecutor treat the instructions as "idle chatter and inconvenient interruptions in the argument he was going to make ... regardless of anything the trial judge ruled or said." (Appellant's Brief, p. 21-22.)

The state asserts that the first two of appellant's objections, even though pursued to an adverse ruling of denial of her request for mistrial, were too general and nonspecific to preserve error. The state cites several cases that hold that objections to jury argument were too general to preserve error. But those cases involved overruled objections or held that the trial court's instruction to disregard the offending argument vitiated any harm, while in the instant case the trial court sustained appellant's objections and instructed the jury to disregard. It is thus reasonable to conclude

that the basis of the objections were readily apparent to the trial court. "The very nature of the prosecutor's argument coupled with defense counsel's objection informed the court of the nature of the error." *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). We reject the state's argument that appellant's objections were too general to preserve error.

The state also suggests that its argument to the jury that it had been misled about the meaning of "normal use" was justified by appellant's cross-examination of the state's police-officer witnesses and by some of his voir dire questioning. It argues that the state's argument was "not inaccurate" "[n]or ... unsupported by the record." The state also argues that, since most citizens are aware that jurisprudence is shaped by case law created when judgments are appealed, the prosecutor's explanation of the origin of "normal use" as having been developed through case law was simply "a statement of a matter generally within the realm of common knowledge."

The state further asserts that its comments in argument, which were directed at defense counsel's tactics employed in developing his defensive theory of the case during trial, were appropriate. It suggests that, if describing defense counsel's conduct as "shameful" could be seen as impugning defense counsel's character, the use of "shameful" rather than employing harsher language was not so inflammatory, prejudicial, or extreme that it was not cured by the trial court's immediate instruction to disregard.

"We have consistently held that argument that strikes at a defendant over the shoulders of defense counsel is improper." *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007), *cert. filed*, #07-9590, February 29, 2008. "It is axiomatic that the state may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity." *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). We have "long recognized that prosecutors'

arguments which attack the personal morals or trustworthiness of defense counsel are manifestly improper because they undermine the adversarial system by unfairly prejudicing the jury against the defendant's attorney." *Fuentes v. State*, 991 S.W.2d 267, 274 (Tex. Crim. App. 1999). We have also noted the impact of improper closing jury arguments because they are the last thing the jury hears before deliberations and that an instruction to disregard may be insufficient to remove the prejudice of some such arguments. *Norris v. State*, 902 S.W.2d 428, 443 (Tex. Crim. App. 1995). In the instant case, the prosecutor's challenged comments were made during his second closing argument and were thus part of the last thing the jury heard before deliberations.

"[A] prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). In the instant case, the prosecutor twice referred to defense counsel personally by name during the course of the state's closing jury argument and called defense counsel's arguments "shameful." Thus in the instant case, the prosecutor did improperly strike at appellant over the shoulder of his trial counsel.

Permissible jury argument generally falls within four areas: 1) evidence summation; 2) reasonable deductions from the evidence; 3) responses to opposing counsel's arguments; and 4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); *Alejandro v. State*, 493 S.W.2d 230, 231-32 (Tex. Crim. App. 1973). Striking at a defendant over the shoulder of counsel is not a permissible basis for jury argument. We look to three factors to determine if impermissible jury argument warrants a mistrial. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). These factors are: "(1) severity of the misconduct (the magnitude of the prejudicial

effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Id*. and *Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000). Nevertheless, the state correctly points out that "[b]ecause all argument has its own individual context from which it arises, caselaw concerning improper argument can never be really anything more than instructive in an analysis of a particular improper argument." (State's Reply Brief, p. 32.)

As for severity of the misconduct, the prosecutor's statements were a personal attack on defense counsel, by name, and included an explicit assertion that the jury had "been mislead [sic] as to what normal use is" and that appellant's attorney's actions were "shameful." The state acknowledges that "there was no evidence before the jury establishing that defense counsel *knowingly* misled the jury, and admittedly, the basis of the implication that defense counsel did so . . . was outside the record." (State's Reply Brief, p. 24.)

The trial court's attempt at curative measures was ineffective in that the prosecutor continued to make the same arguments, even in the face of the repeatedly sustained objections and repeated instructions to the jury to disregard. Repeated curative attempts and cautionary instructions that are repeatedly ignored cannot be considered effective. We find the first two factors to weigh in favor of appellant.

The certainty of a conviction absent the improper argument is extremely speculative. Although there was disputed testimony about whether appellant's faculties were impaired, and the

state acknowledged that the police testimony was problematic,[2] the most hotly disputed issue was whether appellant had been, in fact, the driver of the vehicle. Appellant and the other occupant of the car both testified that the other occupant had been driving, thus conceding that appellant had lied at the scene when she had claimed to have been the driver. Appellant's credibility was a major question for the jury to resolve, and we cannot assume with any confidence that a conviction was certain without the prosecutor's attacks on appellant over the shoulder of her trial counsel. The prosecutor's arguments that appellant's trial attorney was shamefully misleading the jury brought into question veracity and credibility–important issues for the jury to resolve.

It is appropriate to object to defense jury argument if the state believes the argument is attempting to mislead the jury regarding applicable principles of law; the trial court can then rule on such an objection. However it is inappropriate to fail to object to such a defense jury argument and then respond by arguing that defense counsel is attempting to mislead the jury. Such an attack is a classic example of striking at the defendant over the shoulders of defense counsel.

In *Fuentes v. State*, 664 S.W.2d 333 (Tex. Crim. App. 1984), we held that a prosecutor's comments that defense counsel was acting "in bad faith like usual" and that evidence which defense counsel was seeking to elicit was "garbage," were manifestly improper, harmful, and prejudicial, and thus constituted reversible error. In *Gomez v. State*, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985), we held that a prosecutor's jury argument accusing defense counsel of manufacturing evidence was not cured by an instruction to disregard and was thus reversible error.

---

[2] The prosecutor's jury argument acknowledged the problematic police testimony, saying,

"The officer's testimony. I'll admit to you, it stunk. It was bad. I've seen much better. Their training and their knowledge of the law could have been a lot better."

In this case, we likewise conclude that, in aggregate, the state's jury arguments attacking defense counsel were manifestly improper, harmful, and prejudicial and were not cured by the trial court's instructions to disregard. We hold that the court of appeals erred in finding that the trial court did not abuse its discretion when it failed to grant a mistrial. *See*, *e.g.*, *Hawkins v. State*, 135 S.W.3d 72, 76-77 (2004). We sustain appellant's second ground for review, reverse the judgment of the court of appeals, and remand to the trial court for a new trial.[3]

Delivered: July 2, 2008
Do not publish

---

[3] Because we have sustained ground number two, we dismiss ground number one.