02-11-472-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00472-CR

 

 









 
 
 Tyra
 Ann Whitney
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District
 Court No. 1
  
 of
 Tarrant County (1217006D)
  
 February
 28, 2013
  
 Opinion
 by Justice Gabriel
  
 (p)
 
 


 

 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Justice Lee Gabriel








 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00472-CR


 
 
 Tyra Ann Whitney
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

          Appellant
Tyra Ann Whitney appeals her conviction for murder, contending in three issues that
the trial court erred by (1) denying co-counsel’s active participation
during trial, (2) issuing a no-duty-to-retreat instruction in the jury charge,
and (3) denying a mistrial after sustaining an objection to the State’s
closing argument.  We affirm.

Background
Facts and Procedural History

          Appellant
killed her daughter Tashira’s boyfriend with a hammer.  Tashira and the deceased
often quarreled, at times violently.  During their last argument, Tashira
called Appellant, who then drove to Tashira’s apartment.  A neighbor saw Appellant
climb out of her van and walk to the apartment holding a yellow handled hammer.

          The
deceased was gathering his belongings in the bedroom when the Appellant came
through the unlocked apartment door.  She and the deceased started arguing and
continued to do so after Tashira closed the bedroom door between them.  When
the door reopened the deceased approached Appellant.  It is unclear from the
record whether he intended to attack Appellant or to escape past her out the
front door.  Before he could do either, Appellant threw a cup of bleach-water into
his face.  He fell facedown to the floor, and Appellant struck him in the back
of the head with the hammer.

          As
Appellant walked back to her van, the neighbor who had seen her arrive noticed
that the hammer in her hand had blood on it.  Appellant explained as she left,
“I told you I was gonna kill that n[. . . ]––if he ever laid a hand on my daughter
again.”

          The
deceased died from his injuries shortly thereafter, and the State charged
Appellant with murder.

          Appearing
before a magistrate, Appellant submitted a written election-of-counsel form,
with supporting affidavit of indigency attached, requesting a court-appointed
lawyer.  The magistrate found Appellant indigent and appointed attorney William
Harris (“Counsel”) for her defense.

          Appellant’s
daughter Tashira had given two statements to the police:  one oral, recorded in
a detective’s vehicle, and the other written at the police station.  But she did
not talk with anyone from the district attorney’s office before trial.  Four or
five times, however, Tashira met with the defense, to discuss her testimony––the
last time in the week before trial.

          A
visiting judge presided over Appellant’s trial.  On the first day during jury
selection, she introduced Counsel and Wes Bearden to the venire as the
attorneys that represented Appellant.  Counsel conducted Appellant’s portion of
voir dire, and after empanelling a jury, the trial court recessed until the
morning.

          The
next day, outside the jury’s presence, the visiting judge reported that the
elected judge of the trial court had instructed her not to allow Bearden to
actively participate in the trial because he had not been appointed as Appellant’s
counsel or co-counsel.  The trial court noted, however, that Bearden could
remain in the courtroom and “assist” Counsel “in any fashion” other than “actively
questioning witnesses and making objections and things of that nature.”  Counsel
objected to this arrangement and Appellant expressed her desire to have Bearden
fully participate under Counsel’s supervision.  The trial court overruled the
objection but granted a running objection on the issue.

          The
jury convicted Appellant of murder and, after the punishment phase, assessed
punishment at fifteen years’ confinement, finding that she had acted under the
immediate influence of sudden passion arising from an adequate cause.[2]  The trial court
sentenced Appellant accordingly.

Denial
of Co-counsel

          In
her first issue, Appellant contends that the trial court denied her
constitutional right to choose co-counsel to assist her court-appointed counsel
at trial.[3]  Appellant cites Powell
v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58  (1932), for the
proposition that the Sixth Amendment right to the assistance of counsel
“includes the right of the accused to counsel of [her] choice if counsel is
retained or volunteers pro bono.”  But this right to choose counsel does not extend
to defendants who have counsel appointed for them by the court.  United
States v. Gonzalez–Lopez, 548 U.S. 140, 151, 126 S. Ct. 2557, 2565
(2006); United States v. Benitez-Casas, 439 F.App’x 307, 308 (5th Cir.
2011); see Montejo v. Louisiana, 556 U.S. 778, 784, 129 S. Ct.
2079, 2084 (2009) (“An indigent defendant has no right to choose his counsel[.]”)
(citing Gonzalez–Lopez, 548 U.S. at 151, 126 S. Ct. 2557).

          The
United States Supreme Court has not addressed the specific issue of whether the
Sixth Amendment guarantees any right for an indigent defendant to choose co-counsel
to assist counsel that has been appointed by the trial court.  But in Trammell,
this court resolved the issue adversely to Appellant’s position.  287 S.W.3d at
343–44.

          In
Trammell, we noted that the Supreme Court has considered whether “a trial
court’s erroneous deprivation of a criminal defendant’s choice of counsel
entitles him to a reversal of his conviction.”  Id. at 342 (citing Gonzalez–Lopez,
548 U.S. at 142, 126 S. Ct. at 2560).[4]  Analyzing the
argument that the trial court had denied the defendant his Sixth Amendment
right to “paid counsel of his choosing,” the Supreme Court noted that it had
previously held that “a defendant who does not require appointed counsel
[has the right] to choose who will represent him.” Id. (citing Gonzalez–Lopez,
548 U.S. at 144, 126 S. Ct. at 2561) (emphasis added)).  It then reversed
the conviction because it decided that the trial court violated the appellant’s
right to counsel of his choice, which it held was a structural error that required
no showing of harm.  Id. (citing Gonzalez–Lopez, 548 U.S. at
144–52, 126 S. Ct. at 2561–66).

          But
the Supreme Court explicitly limited its holding in Gonzalez–Lopez to cases
in which defendants do not have court-appointed counsel:  “Nothing we have said
today casts any doubt or places any qualification upon our previous holdings
that limit the right to counsel of choice . . . . [T]he right to counsel of
choice does not extend to defendants who require counsel to be appointed for
them.”  Id. at 343 (citing Gonzalez–Lopez,  548 U.S. at 151,
126 S. Ct. at 2565 (emphasis added)); see United States v. Rincon,
223 F.App’x 331, 331 (5th Cir. 2007) (“Gonzalez–Lopez clearly
distinguishes itself from situations involving appointed counsel.”); see
also Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624,
109 S. Ct. 2646, 2652 (1989) (stating that the Sixth Amendment “guarantees
defendants in criminal cases the right to adequate representation, but those who
do not have the means to hire their own lawyers have no cognizable complaint so
long as they are adequately represented by attorneys appointed by the courts”).

          Similarly,
Texas courts, including ours, have specifically held that an indigent defendant
does not have a right to the counsel of his own choosing.  See Trammell,
287 S.W.3d at 343–44; Maes v. State, 275 S.W.3d 68, 71 (Tex. App.––San
Antonio 2008, no pet.) (“A defendant does not have the right to choose
appointed counsel, and unless he waives his right to counsel and chooses to
represent himself, or shows adequate reasons for the appointment of new
counsel, he must accept court-appointed counsel.”); Long v. State, 137
S.W.3d 726, 735 (Tex. App.––Waco 2004, pet. ref’d); Garner v. State, 864
S.W.2d 92, 98 (Tex. App.––Houston [1st Dist.] 1993, pet. ref’d) (indicating
that an indigent defendant “must accept the counsel appointed by the court”); see
also United States v. Hughey, 147 F.3d 423, 428 (5th Cir.) (relating that
the “Sixth Amendment right to counsel of choice is limited, and protects only a
paying defendant’s fair or reasonable opportunity to obtain counsel of the
defendant’s choice”), cert. denied, 525 U.S. 1030 (1998).

          Also,
Texas cases expressing that a defendant’s Sixth Amendment rights are protected
when he has effective assistance from either retained or appointed counsel
weigh against Appellant’s position.  Trammell, 287 S.W.3d at 343; see
Malcom v. State, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982)
(stating that once “the court has appointed an attorney to represent the
indigent defendant, the defendant has been accorded the protections provided
under the Sixth and Fourteenth Amendments”); Montemayor v. State, 55
S.W.3d 78, 88–89 (Tex. App.––Austin 2001, pet. ref’d) (holding that the trial
court properly removed the defendant’s appointed counsel when the defendant
retained other counsel); Ex parte Williams, 870 S.W.2d 343, 348 (Tex. App.––Fort
Worth 1994, pet. ref’d) (reciting that a defendant “has the right to have
counsel appointed if retained counsel cannot be obtained”) (quoting Strickland
v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)); Hazelwood
v. State, 838 S.W.2d 647, 649 (Tex. App.––Corpus Christi 1992, no pet.)
(explaining that an accused has the right “to be represented by either
retained or court-appointed counsel”) (emphasis added).

          Accordingly,
we hold that the trial court did not violate the Sixth Amendment when it
excluded Bearden from actively participating as co-counsel alongside
Appellant’s court-appointed counsel, and we overrule Appellant’s first issue.  See
Gonzalez–Lopez, 548 U.S. at 151, 126 S. Ct. at 2565; Trammell,
287 S.W.3d at 343–44.

No-Duty-to-Retreat
Instruction

          In
her second issue, Appellant contends that the trial court erred by including in
its charge to the jury an instruction that Appellant concedes tracks a penal
code provision regarding a duty to retreat.  She complains of the following instruction:

A defendant who has a right to be present at the location
where the force is used, who has not provoked the person against whom the force
is used, and who is not engaged in criminal activity at the time the force is
used is not required to retreat before using force in self-defense.

Although
Appellant concedes that this instruction tracks the penal code, see Tex.
Penal Code Ann. § 9.31(e) (West 2011), she argues that because the
legislature eliminated the statutory duty to retreat in 2007, the trial court erred
by including this instruction in the charge because it implies that there is
a duty to retreat.  In other words, Appellant argues that the charge was
erroneous because it “implied the existence of a non-existent duty.”

          Prior
to September 1, 2007, section 9.32 of the penal code provided that the use of
deadly force was justified only “if a reasonable person in the actor’s
situation would not have retreated.”  See Act of May 16, 1995, 74th
Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141–42 (amended 2007)
(current version at Tex. Penal Code Ann. § 9.32 (West 2011)).  However,
effective September 1, 2007, the 80th Legislature amended the statute to delete
existing language regarding a general duty to retreat and to add new language
specifying the circumstances under which a person does not have a duty
to retreat.  Morales v. State, 357 S.W.3d 1, 4–5 (Tex. Crim. App. 2011). 
The legislature deleted from penal code section 9.32(a)(2) the language “if a
reasonable person in the actor’s situation would not have retreated; and,” and
it added the following that now appears in section 9.32(c):

A person who has a right to be present at the location
where the deadly force is used, who has not provoked the person against whom
the deadly force is used, and who is not engaged in criminal activity at the
time the deadly force is used is not required to retreat before using deadly
force as described by this section.

Act
of Mar. 20, 2007, 80th Leg., R.S., ch. 1, § 3, secs. 9.31, 9.32, 2007
Tex. Gen. Laws 1, 2 (current version at Tex. Penal Code Ann. § 9.32(c) (West
2011)).

          Section
9.31(e) was added at the same time and differs from section 9.32(c) only by
omitting “deadly” before each of the four appearances of the word “force.”  It
reads as follows:

A person who has a right to be present at the location
where the force is used, who has not provoked the person against whom the 
force is used, and who is not engaged in criminal activity at the time the
force is used is not required to retreat before using force as described by
this section.

Id. at
1 (current version at Tex. Penal Code Ann. § 9.31(e) (West 2011)).[5]

          Appellant’s
characterization of the duty to retreat as “non-existent” may be too strong.  In
Morales, the court of criminal appeals addressed the changes made to the
self-defense statute by the 80th Legislature, specifically, the no-duty-to-retreat
provisions at issue here.  357 S.W.3d at 4–6.  One of Morales’s grounds for
review asked, “Whether the 2007 amendment to the self-defense statute
eliminated the duty to retreat in a self-defense case.”  Id. at 4, n.4. 
Although the opinion does not specifically address this question, it implies
that the duty to retreat is not, in Appellant’s words, “non-existent.”  First,
the court acknowledged that when the provisions apply, the defendant has no
duty to retreat.  Id. at 5.  Then, in discussing the “no duty to retreat
provisions,” the court stated that when “these provisions do not apply, the
failure to retreat may be considered in determining whether a defendant
reasonably believed that his conduct was immediately necessary to defend himself
or a third person.”[6]  Id.  Further, the
court wrote, when the provisions do not apply, the prosecutor

may argue the failure to retreat as a factor in
determining whether the defendant’s conduct really was immediately necessary. Or
if a fact issue is raised regarding the applicability of the provisions that
specifically negate a duty to retreat, the prosecutor can argue that the facts
do not satisfy the provisions and then argue the failure to retreat as a factor
relevant to the defensive issue.

Id.  We
conclude, therefore, that the report of the death of the duty to retreat is
exaggerated.

          And
as the State points out, Appellant cites no authority for her position.  But
even if an instruction setting out the circumstances under which a person using
force (or deadly force) has no duty to retreat necessarily implies the
existence of such a duty, we do not hold it error for the trial court to have included
the instruction in its charge.  The court of criminal appeals has held that a
trial court will not be held to have erred in its jury charge by tracking the
law as set out by the legislature.  Martinez v. State, 924 S.W.2d 693,
699 (Tex. Crim. App. 1996); Riddle v. State, 888 S.W.2d 1, 8 (Tex. Crim.
App. 1994), cert. denied, 514 U.S. 1068 (1995).  As stated above,
Appellant concedes that the complained-of instruction tracked the law as set
out by the legislature.

          Moreover,
the legislature added the language of which Appellant complains in the very same
act in which it deleted the language that she calls the statutory basis for a
duty to retreat.  See Act of Mar. 20, 2007, 80th Leg., R.S., ch. 1,
§ 3, secs. 9.31, 9.32, 2007 Tex. Gen. Laws 1, 1–2, supra.  What we
take from that is that the legislature intended to eliminate a defendant’s
burden to affirmatively establish that he or she retreated before employing
force (or deadly force) and to stress the set of circumstances under which a
defendant could not be held to have such a duty.  We refuse to infer,
therefore, that the legislature intended to abolish the duty to retreat while
at the same time implying its continued existence.  Absent any controlling
authority to the contrary, Appellant’s position is not persuasive and we
overrule her second issue.  See Martinez, 924 S.W.2d at 699; Riddle,
888 S.W.2d at 8.

Jury
Argument

          In
her third and final issue, Appellant contends that the prosecutor improperly
struck at her over the shoulders of defense counsel during closing argument
when she argued that Tashira told the police on the day of the murder something
different than what she told the jury “after four to five visits at the defense
attorney’s office.”  The trial court sustained Appellant’s objection,
instructed the jury to disregard, and denied Appellant’s motion for mistrial. 
The issue, then, is whether the trial court abused its discretion by not
granting a mistrial.  See Archie v. State, 340 S.W.3d 734, 738–40 (Tex.
Crim. App. 2011); Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004);
Hunt v. State, No. 02-11-00101-CR, 2012 WL 858613, at *2 (Tex. App.––Fort
Worth Mar. 15, 2012, pet. ref’d) (mem. op., not designated for publication).

          We
review a trial court’s ruling on a motion for mistrial for an abuse of
discretion.  Hawkins, 135 S.W.3d at 77; Hunt, 2012 WL 858613, at
*2.  When the refusal to grant a mistrial follows an objection for improper
jury argument, we balance three factors to determine whether the trial court
abused its discretion: (1) the severity of the misconduct (prejudicial
effect), (2) curative measures, and (3) the certainty of conviction
absent the misconduct.  Archie, 340 S.W.3d at 739; Hawkins, 135
S.W.3d at 77; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Hunt, 2012
WL 858613, at *2.  Only in extreme circumstances, when the prejudice caused by
the improper argument is incurable, that is, “so prejudicial that expenditure
of further time and expense would be wasteful and futile,” will a mistrial be
required.  Hawkins, 135 S.W.3d at 77; see Archie, 340 S.W.3d 739
(“Mistrial is . . . appropriate . . . when . . . the objectionable events ‘are
so emotionally inflammatory that curative instructions are not likely to
prevent the jury from being unfairly prejudiced against the defendant.’”)
(citing Young v. State, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)).  In
most cases, an instruction to disregard will cure the alleged harm.  Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 944 (2001).

          In
examining the first factor, we consider the severity or prejudicial effect of
the misconduct.  See Archie, 340 S.W.3d at 739; Hawkins, 135
S.W.3d at 77.  Here is the portion of the State’s closing argument that Appellant
complains struck at her over her counsel’s shoulders:

And what’s the testimony then?  He [the deceased] is
gathering up his property to leave.  Tashira says he opens the door, and the
defendant says, her mother, she tells Detective O’Brien immediately after this
happens, not a year later, not after four to five visits at the defense attorney’s
office, she says her mother says, “Go ahead and hit me.”

          The
trial court sustained Appellant’s objection.  But it may have done so in an
abundance of caution because we are not entirely convinced that the comment was
improper, let alone severe or all that prejudicial.

          Permissible
jury argument generally falls into one of four areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer
to the argument of opposing counsel; or (4) a plea for law enforcement.  Davis
v. State, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010), cert. denied,
132 S. Ct. 128 (2011); Cannady v. State, 11 S.W.3d 205, 213 (Tex.
Crim. App.), cert. denied, 531 U.S. 850 (2000).  When a prosecutor makes
uninvited and unsubstantiated accusations of improper conduct directed toward a
defendant’s attorney, in an attempt to prejudice the jury against the
defendant, courts refer to this as striking a defendant over the shoulders of
his counsel.  Phillips v. State, 130 S.W.3d 343, 355 (Tex. App.––Houston
[14th Dist.] 2004, pet. ref’d) (op. on reh’g), aff’d at 193 S.W.3d 904
(Tex. Crim. App. 2006).

          Argument
that strikes at a defendant over the shoulders of defense counsel is improper. 
Davis, 329 S.W.3d at 821; Wilson v. State, 7 S.W.3d 136, 147
(Tex. Crim. App. 1999); Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App.), cert. denied, 516 U.S. 832 (1995).  This prohibition
protects the defendant from improper prosecutorial character attacks on defense
counsel.  Davis v. State, 268 S.W.3d 683, 713 (Tex. App.––Fort Worth
2008, pet. ref’d).

          A
prosecutor risks improperly striking at a defendant over the shoulders of
counsel when the argument refers to defense counsel personally and when the
argument explicitly impugns defense counsel’s character.  Mosley, 983 S.W.2d
at 259; Davis, 268 S.W.3d at 712.  For example, a prosecutor
impermissibly strikes at a defendant over counsel’s shoulders when the
prosecutor argues that defense counsel manufactured evidence, suborned perjury,
accepted stolen money, or represented criminals.  See Phillips, 130
S.W.3d at 355; Washington v. State, 822 S.W.2d 110, 119 (Tex. App.––Waco
1991), rev’d on other grounds, 856 S.W.2d 184 (Tex. Crim. App. 1993); see
also Fuentes v. State, 664 S.W.2d 333, 335 (Tex. Crim. App. [Panel Op.]
1984) (prosecutor may not accuse defense counsel of bad faith or insincerity or
discuss counsel’s “usual antics”); Anderson v. State, 525 S.W.2d 20, 22
(Tex. Crim. App. 1975) (arguments that criticize defense counsel, including
that defense counsel “did not have guts enough” to argue innocence of his
client and request for more time to argue because of defense counsel’s “frivolous
objections” were improper); Jones v. State, 151 Tex. Crim. 115, 119, 205
S.W.2d 590, 592 (1947) (prosecutor argued that men had been “cleared of murder
by the machinations of” defense counsel’s  “great” and “shrewd mind” that would
“take care of everything and furnish the evidence”).

          An
argument that is directed at the defendant but not personally at defense
counsel is not a strike over the shoulders of counsel.  See Davis,
329 S.W.3d at 823.  For an improper jury argument to mandate reversal, it must
be extreme, violate a mandatory statute, or inject new facts into the record.  Brandley
v. State, 691 S.W.2d 699, 712–13 (Tex. Crim. App. 1985).  The standard of
review for a trial court’s ruling on an objection asserting improper jury
argument is abuse of discretion.  See Lemon v. State, 298 S.W.3d 705,
707 (Tex. App.––San Antonio 2009, pet. ref’d); York v. State, 258 S.W.3d
712, 717 (Tex. App.––Waco 2008, pet. ref’d).

          We
do not read the complained-of portion of the prosecutor’s remarks as an attack on
counsel’s character or a criticism of his defense of Appellant.  See Mosley,
983 S.W.2d at 259.  Nor did the prosecutor accuse counsel of any wrongdoing or
impropriety.  See id.; Fuentes, 664 S.W.2d at 335; Phillips, 130
S.W.3d at 355.  Rather, the prosecutor’s argument pointed out––as the record
amply demonstrated––that Tashira’s original statements to police differed from
what she testified to at trial.  Although it would not be unreasonable to infer
that she changed her story after consulting with defense counsel, it does not
necessarily follow that she did so at counsel’s direction.  Nor did the
prosecutor argue that counsel directed her to change her story.  She merely
argued that the story changed between the time Tashira told it to the police on
the day of the murder and when she told it to the jury and that in between the
two she had visited with the defense.  And, again, the record supports that
argument.

          The
cases showing strikes over the shoulders of counsel have been more directly
aimed at counsel than this.  See Mosely, 983 S.W.2d at 259; Fuentes,
664 S.W.2d at 335 (prosecutor argued defense counsel acted “in bad faith like
usual” and knew purported evidence of police misconduct was “a bunch of garbage”);
Wilson v. State, 938 S.W.2d 57, 58 (Tex. Crim. App. 1996) (prosecutor
argued that “[defense counsel] wishes . . . that you turn a guilty man free . .
. because he doesn’t have the obligation to see that justice is done”); overruled
on other grounds by Motilla v. State, 78 S.W.3d 352, 356–57 n.26 (Tex.
Crim. App. 2002); Anderson v. State, 525 S.W.2d 20, 21–22 (Tex. Crim. App.
1975) (State accused defense attorneys of lying); Phillips, 130 S.W.3d
at 356–57 (State’s arguments in a sexual assault of a child case that the
defense—“nailed [the complainant] up on a cross,” “nail[ed her] to a cross,”
and “called her whore”—were targeted at defense counsel’s handling of the case
and made toward counsel personally).

          Nevertheless,
largely because the trial court sustained the objection, we will assume that
the prosecutor’s remark was improper.  Skipping for the time being the first
factor for determining whether the trial court erred by refusing a mistrial
based on improper jury argument (severity or prejudicial effect), under the
second factor, we review the character of the measures adopted to cure the
misconduct.  See Archie, 340 S.W.3d at 739; Hawkins, 135 S.W.3d
at 77.  The law generally presumes that instructions to disregard and other
cautionary instructions will be duly obeyed by the jury.  Archie, 340
S.W.3d at 741; Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.), cert.
denied, 484 U.S. 905 (1987).  And generally, a trial court cures any error
from an improper jury argument when it instructs the jury to disregard the
comment.  See Wilkerson v. State, 881 S.W.2d 321, 327 (Tex. Crim. App.);
cert. denied, 513 U.S. 1060 (1994); Phillips, 130 S.W.3d at 355. 
In this case, the trial court sustained the objection to the prosecutor’s
argument, immediately ordered the jury to disregard it, and the prosecutor did
not revisit this line of argument.  The second factor, therefore, weighs in
favor of the trial court’s ruling.

          Returning
to the first factor, we conclude that the remark was not severe or
prejudicial.  As we have said, it appears to us that the gist of the argument
was directed at Tashira and her having changed her story and that argument was
supported by the record.  During the State’s examination of Tashira, the
prosecutor pointed out several instances in which Tashira’s statements to the
police differed from her testimony at trial.  The prosecutor’s remark reminding
the jury of that fact did not inject anything into the trial of which the jury
was previously unaware.  Even assuming that the prosecutor’s remark was
improper, we hold that it was not severe or unduly prejudicial.  The first
factor weighs against Appellant’s position.

          Lastly,
under the third factor, the reviewing court looks to the certainty of
conviction absent the misconduct.  See Archie, 340 S.W.3d at 739; Hawkins,
135 S.W.3d at 77.  We find the evidence to support Appellant’s conviction to be
fairly compelling.  In our view, the evidence supporting the conviction was
strong, and the jury would almost surely have convicted Appellant regardless of
the prosecutor’s comment during her closing argument.

          The
magnitude of the prejudice caused by the prosecutor’s remark was not so great
that a jury would necessarily have discounted the trial court’s instruction to
disregard it.  It seems unlikely that the jury would have ignored the trial
court’s timely instruction and convicted Appellant, not on the compelling
evidence introduced against her, but because the prosecutor implied that
Appellant’s daughter changed her testimony after consulting with defense
counsel.  Under these circumstances, assuming without deciding that the
prosecutor’s comments were improper, we hold that the trial court did not abuse
its discretion by denying Appellant’s request for a mistrial.  See Archie,
340 S.W.3d at 742; Wilkerson, 881 S.W.2d at 327.  Accordingly, we
overrule Appellant’s third issue.

Conclusion

          Having
overruled all of Appellant’s issues, we affirm the judgment of the trial court.

 

LEE GABRIEL
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and GABRIEL, JJ.

 

PUBLISH

 

DELIVERED:  February 28,
2013









[1]See Tex. R. App. P. 47.4.





[2]Murder is a second-degree
felony if, at the punishment phase, the defendant proves by a preponderance of
the evidence that she acted under the influence of sudden passion arising from
an adequate cause.  Tex. Penal Code Ann. § 19.02(d) (West 2011).  The penal
code defines “sudden passion” as “passion directly caused by and arising out of
provocation by the individual killed” arising “at the time of the offense” and
“not solely the result of former provocation.”  Id. § 19.02(a)(2). 
“‘Adequate cause’ means cause that would commonly produce a degree of anger,
rage, resentment,  or terror in a person of ordinary temper, sufficient to
render the mind incapable of cool reflection.”  Id. § 19.02(a)(1).





[3]Because she does not argue
that our state constitution or any statute provides greater protection than the
Sixth Amendment of the United States Constitution, we treat Appellant’s first
issue solely as a Sixth Amendment claim.  See Trammell v. State, 287
S.W.3d 336, 342 n.12 (Tex. App.––Fort Worth 2009, no pet.).





[4]In Gonzalez–Lopez,
the federal trial court had denied pro hac vice admission to the defendant’s
desired out-of-state retained counsel, and it had refused to allow that counsel
to have contact with defendant’s local counsel during trial; it even ordered a
United States Marshal to sit between the two.  Id. (citing Gonzalez–Lopez,
548 U.S. 142–43, 126 S. Ct. at 2560).





[5]In conceding that the
instruction tracks the penal code, Appellant cites section 9.32(c).  Actually,
the court’s charge more closely tracks section 9.31(e).  But given the
similarity of the two provisions––9.32(c) refers to “deadly force” whereas
9.31(e) refers only to “force”––and given that neither side has made an issue
of the trial court’s using language from 9.31(e) as opposed to 9.32(c), the
distinction between the two statutes is not germane to our disposition of this
appeal.





[6]See Tex. Penal Code
Ann. § 9.31(a) (force is justified “when and to the degree the actor
reasonably believes the force is immediately necessary to protect” against
unlawful force), § 9.32(a)(2) (“when and to the degree the actor
reasonably believes the deadly force is immediately necessary” to protect
against deadly force or to prevent the imminent commission of certain crimes).